# Mayberry's Appeal.

If an executor, instead of paying over to the trustee of his testator's minor children, their portion of the estate, himself undertake their support and education, having assumed the duties of trustee, he will be held strictly to the will of the testator in that respect.

An executor is liable for interest on moneys remaining uninvested in his hands up to the time of the decree.

An executor is not entitled to commissions on debts charged in the inventory but not collected; but he is to be allowed commissions on the value of household furniture, delivered to the widow and legatees under the will.

APPEAL from the Orphans' Court of *Philadelphia.*

This was an appeal by Thomas C. Mayberry, one of the executors of Israel Robinson, deceased, from the decree of the court below upon the settlement of his accounts.

Israel Robinson died on the 29th September 1848, and by his will devised as follows :—

"5. I give and bequeath to my wife, Sarah Robinson, late Sarah Burgess, all the rest of my household and kitchen furniture; and I also give and bequeath to her an annuity of three hundred dollars, to be paid to her during life and while she shall remain my widow, in quarterly payments of seventy-five dollars each, counting from the day of my death, and at her death or marriage, whichever shall happen first, then said annuity shall cease.

"6. I do hereby authorize and empower my executors hereinafter named, to put *all of my property*, not above named devised or bequeathed to my son James Berry, and my daughter Emma Jane, and my said wife, shall be put out at interest on mortgage for the best interest which can be obtained for the same, and out of the first interest received the said annuity to my said wife shall be paid.

"7. I direct that the remainder of my property shall be divided into six parts, and I give and bequeath one of such parts to my son James Berry Robinson, the interest during his minority to be applied for his support and education, and the principal to be paid him as he attains the age of twenty-one years.

"8. I give and bequeath one-sixth part of such remainder or residue of my property to Benjamin Franklin Robinson, of New York, to have and to hold the same for ever, in trust, nevertheless, that he will hold the same to and for the use of my said daughter

Emma Jane; that he will use and employ the clear income thereof, or so much as may be required, for her support and education during her minority, or until her marriage on her coming of age of twenty-one years, whichever shall first happen, and after she shall attain such full age, that he shall pay her the income aforesaid as the same shall accrue, and not by way of anticipation, during the time she shall remain unmarried; and on her marriage said trustee shall take a part of the principal of the said money hereby given to her, not exceeding five hundred dollars, to buy furniture for the said Emma Jane, and to give her a setting out, which furniture shall be held by him in trust for her, and after her marriage to pay her the income of the remainder hereby given in trust for her during her natural life; and further in trust to pay the said principal hereby given to the said trustee for her to such person or person as she the said Emma Jane shall, by her last will, or paper in the nature of a last will, direct and appoint; and for want of such direction and appointment, then to pay the same to her next of kin, it being my wish and will that no husband of the said Emma Jane may at any time take, shall interfere with the estate or property hereby given, and that the same shall not be liable for his debts."

He then bequeathed to the said Benjamin F. Robinson four other sixth parts of his estate, for the use of his daughters Helena E., Anna E., Laura R., and Clara V. Robinson, upon the same trusts as declared in respect to his daughter Emma Jane's portion. Laura died before her father, unmarried and without issue.

The accountant, instead of paying over the children's portion of the residuary estate to the trustee appointed by the will, advanced, from time to time, various sums, for their maintenance and education, to an amount exceeding their income. Before the auditor, the trustee objected to the allowance to the executor of credits for such payments beyond the annual income of the children; he also claimed that the accountant should be charged with interest on the moneys remaining uninvested in his hands; and that commission should not be allowed on debts included in the inventory but not collected, nor on the value of the household furniture delivered to the widow and children under the will. And on the hearing of exceptions to the auditor's report, the court below so decreed, the following opinion being delivered by THOMPSON, P. J. :—

" The language used by the testator in the eighth clause of his will, so clearly indicates the intention that the principal of the shares devised in trust for his children, should be received and held by the trustee, that we have no doubt of the correctness of the auditor's decision upon this question. The trustee is directed not only to dispose of the income, but to appropriate a part of the principal in case of the marriage of the *cestui que trust*, for her immediate use, and to hold the remainder for her sole and sepa-

rate use, so as not to be liable for the debts of any husband, and to pay the principal at her death to such persons as she shall by her last will direct and appoint.

" These powers given to the trustee, of necessity require that the trust fund should be in his hands; so the testator has willed it, and the apparent inconsistency arising out of the language of the sixth clause of the will, is obviated by permitting the executors to retain and invest an amount sufficient to secure the payment of the annuity given to the wife of the testator. There is no necessity that they should hold the shares of the children, having no authority to dispose either of the principal or income of those shares, for the care of which the testator has selected another person. This construction of the will disposes of the first, second, and tenth exceptions filed by the accountant.

" The third, fourth, and fifth exceptions are to the charge of interest against the accountant. It appears that a considerable sum of money was received by the accountant which was not invested by him nor paid over to the trustee, and that a further sum sufficient to meet the expenses of administration was in his hands. No sufficient reason appears for the retention of the sum in question. His duty was to invest it, or rather to pay it over to the trustee; he did neither, but kept possession of it, and is of course chargeable with interest upon it. The payments which he assumed to make, out of the principal belonging to the several children, were not warranted by any facts shown. The trustee, who was the proper party to deal with the shares of the children, could not be allowed to expend the principal of their trust-moneys, in addition to the income, unless a strong case of necessity could be shown to justify such an encroachment upon the fund. No such necessity has been shown to exist; and even if the trustee consented to such a misappropriation of the funds (which is not admitted), he could not confer an authority upon. the executor which he did not possess himself, and which the law will not sanction. The accountant could not, therefore, properly charge against the sum due by him for interest, the amount he had expended from the principal. Nor was the executor entitled to credit in his account for the sums paid out of the principal of the trust. The very object of the trust was to preserve the principal, not to expend it, and the auditor in refusing to allow the credits claimed, decided in accordance with the true principle which should regulate such a trust. The seventh, eighth, and ninth exceptions are therefore unsustained.

" The sixth exception is based upon a mistake of a fact. It was supposed by the accountant, and the auditor seems to have taken it for granted, that by the inventory filed, the accountant was charged with the sum of $11,317.72, which consisted of outstand-

ing debts due to the partnership of which the testator was a member.

" This was not the case; the whole amount of the inventory as stated by the appraisers was $26,751.47, which did include the sum in question. But had that amount been introduced into the inventory, the executor could have thereby derived no right to charge commissions upon it—the partnership debts were under the care of the surviving partner, and were not subject to the control of the executor. He had no such interest in them as would entitled him to interfere in their management. His own statement, that the amount of the debts had been improperly introduced into the inventory (as he supposed was the fact), is a sufficient answer to any such claim for compensation.

" The remaining exceptions are disposed of by the views already expressed in relation to the expenditures made from the principal of the trust funds, except the additional exception which relates to the sum to be retained by the executor and invested to raise the sum of $300 per annum for the widow. In considering this exception, the auditor intimates a strong impression, that the sum should be larger than the amount he at first considered sufficient. The testator doubtless intended that the clear sum of $300 should be paid each year to his widow, without deduction for charges and expenses, and to raise that amount, we think the sum of $5700 would not be more than adequate; that sum is therefore directed to be invested under the terms of the will, instead of the sum fixed by the auditor.

" The only other matter that has not been mentioned in considering the objections made by the accountant, is the calculation of interest made by the auditor upon the funds in the accountant's hands up to the time of the audit. In general, it is better to adjust and settle the account as it is filed, unless additions are made by way of surcharge; but as in this case, the auditor made distribution of the whole fund from which interest had accrued, and the calculation of the interest to the same period, was designed to settle the entire liability of the accountant, so as to render it unnecessary to file a subsequent account, for any matter connected with that portion of the trust property. The auditor received and allowed the additional claims made by the accountant up to the same period, and as the entire account appears to have been closed thereby, the irregularity, which works no injury to any one, is not of sufficient importance to disturb the distribution as made by the auditor.

" The exceptions presented on behalf of the trustee, B. F. Robinson, were not much pressed by counsel; the first of those exceptions is, however, properly taken, to the allowance of commissions by the auditor, upon outstanding debts and estimated interests, which were never realized, and as to which the executor assumed

no responsibility and performed no services; commissions are paid as a remuneration for trouble and responsibility, and the mere introduction of items on one side of the account, to take credit for them on the other as unavailable assets, without having made any attempt to realize them, or bestowed any labour upon them, gives no title to any reward whatever. In this we disagree with the views expressed by the auditor, and as to all such items sustain the exception. The remaining exceptions taken by the trustee seem not to be well founded, and are not sustained."

From this decree the present appeal was taken.

*Parsons*, for the appellant.

*Cummins* and *McCall*, for the appellees.

The opinion of the court was delivered by

READ, J.—Israel Robinson died on the 29th September 1848, leaving a will, dated the 1st July in the same year, which was admitted to probate, and letters testamentary were granted to the executors Thomas C. Mayberry and William Amer. By his will, after the payment of debts and funeral expenses, and of certain legacies, one of which was general and the other specific, he gave to his wife an annuity of three hundred dollars during life and while she remained his widow, payable quarterly. He then authorized and empowered his executors to put all of his property, not above devised and bequeathed, out at interest, on mortgage, and out of the first interest received, the said annuity to his wife was ordered to be paid. He then directed the remainder of his estate should be divided into six parts, but really into five parts, owing to the death of one of his children before him, and the provision in a subsequent part of his will, in case of such a contingency.

He gave and bequeathed one-fifth to his son James Berry Robinson, the interest during his minority to be applied for his support and education; and the four other fifth parts of such remainder or residue he then bequeathed severally to Benjamin Franklin Robinson of New York, to have and to hold the same for ever, in trust for each of his four minor daughters, that he would use and employ the clear income thereof (that is, of each respective fifth), or so much as might be required, for her support and education during her minority, or until her marriage or coming of age of twenty-one years, whichever should first happen; and after she should attain such full age, that he should pay her the income aforesaid, as the same should accrue, and not by way of anticipation, and on her marriage to take a part of the principal of the said money thereby given to her, not exceeding five hundred dollars,

to buy furniture, which he was to hold in trust for her and pay her the income of the remainder during her natural life, *and pay the said principal thereby given to said trustee for her*, to her appointees by her last will, and for want of the same to her next of kin.

Whatever doubts may have arisen in the minds of counsel, the scheme of the will is perfectly plain, and if the acting executor had settled his account at the end of the year, and asked the instructions of the Orphans' Court, a simple course would have been pointed out to him, which would have relieved him from all difficulty. The court would have ordered him, having paid all debts and prior legacies and bequests, to have invested on mortgage a sufficient amount to secure the annuity to the widow, and to pay over whatever balance there was, in the proper proportions, to the trustee of the minor daughters of the testator, and whenever future collections were made to pursue the same method in relation to their distribution.

The executor would thus have performed all the duties imposed by law on him, and the trustee would have been bound to apply only the income to the support and education of the minor children, his *cestuis que trust*.

Instead of doing this, the executor kept the whole of the estate in his own hands, with a large portion of it uninvested, paying over for the support and education of the minors what he thought proper, without regard to the income, and settling no account whatever with the register for a period of nearly eight years.

The executor, therefore, not only assumed his own proper duties but also those of trustee for these minors, and as such he was bound strictly to follow the will of his testator.

Upon this clear principle he was properly charged with all excess of expenditure for each child, over its own income, and the loss was to be sustained by him; and he would not be relieved from this, even if the trustee appointed by the decedent had consented to this breach of trust, which, it is clear from the evidence, he never did.

Upon money in the hands of the executor uninvested, the auditor was right in calculating interest up to the filing of his report, and the accountant has been kindly relieved from showing the profits he may have made from its use, and with which he could have been rightfully charged.

We see no error in the disallowance of certain commissions by the auditor and by the court, except in relation to the furniture valued at $429.99, upon which a commission of five per cent. ($21.50) should have been allowed. This being corrected, the decree is affirmed.

> And now, February 17th 1859, it is ordered and decreed that the principal sum of $22,123.84, decreed to be due on the first day of April 1857, be reduced by

the deduction of $21.50, making the true principal sum in the hands of the accountants on that day $22,102.34, and with this modification the decree of the Orphans' Court is affirmed.